# Cornell & Michler's Appeal.

114 .153
198   75

1. Creditors of an incorporated company who have exhausted their remedy at law can, in order to obtain satisfaction of their judgments, proceed in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription although no account is taken of the other indebtedness of the company and the other stockholders are not made parties.

2. Where subscriptions to stock in an incorporated company are made upon conditions that a certain amount shall be subscribed and that amount is not subscribed by reason of a small amount of the subscriptions made by married women are void, subscribers for stock subsequent to the subscription of the married women, and with knowledge thereof, cannot set up a failure of said condition in a proceeding in equity against them by creditors of the company to compel the payment of the stock thus subscribed by them, in payment of the company's debts.

March 9th, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, JJ.  CLARK, J., absent.  GREEN, J. did not sit.

APPEAL from the Court of Common Pleas of *Northampton county*, in equity.   Of January Term 1886, No. 293.

Appeal of Cornell and Michler from the decree of said court, ordering that they pay the plaintiff the sum of $896, being the unpaid amount of their subscription on stock in the Keystone Iron Company, an insolvent corporation.

On the 23d of April, 1881, John Hahn and William Hahn, partners as Hahn & Brothers, James Young, Benjamin Riegel, Joseph Morrison, administrator of Joseph Morrison, deceased, and Kate P. Green, administratrix of Edward H. Green, deceased, filed their bill in equity against Peter F. Arndt, Theodore R. Sitgreaves, William Welch and Abraham Bercaw, partners as Welch & Co.; Elias B. Mack and James A. Edelman, partners as Mack & Edelman; Nelson P. Cornell and A. Keller Michler, partners as Cornell & Michler; and the Keystone Iron Company.

The following is an abstract of the bill:   It avers that the Keystone Iron Co. was incorporated March 24th, 1874, under the Act of June 16th, 1836, and its supplements, for the manufacture of iron.   That after the company was duly organized it proceeded to erect a blast furnace in Northampton County (near Easton), which had been completed at a cost exceeding $175,000.

That the capital stock of the company was originally $100,000 in shares of $50 each, all of which was subscribed prior to date of incorporation, and has been fully paid.

That the stockholders increased, on July 18th, 1873, the capital stock $100,000. That one hundred and thirty-eight shares of the increase were subscribed for unconditionally, when on July 7th, 1874, the Directors authorized conditional subscriptions for $75,000 of the proposed increase, to be binding only when said amount was subscribed; that thereupon the balance was subscribed for.

That the defendants named in the bill subscribed as follows: Welch & Co., for 105 shares; Cornell & Michler, for 30 shares; Mack & Edelman, for 98 shares, and Peter F. Arndt, for 20 shares, at $50 a share. That all of this stock was subscribed for prior to December 26th, 1874, on which day resolutions were passed calling in 10 per cent. a month of the new subscription until otherwise directed.

That notice was given of this call to all subscribers within a week, and that all stock subscribed for has been fully paid except as follows: Welch & Co. owe $5,011; Cornell & Michler, $700; Mack & Edelman, $2,100, and Peter F. Arndt, $1,000. In addition thereto, Catharine Bercaw owes $605, Laura W. Robertson $250, and Abraham Fraley owes $500.

That the said Catharine Bercaw and Laura W. Bobertson were married women at the time of their subscriptions and still are married women, and said Fraley was at time of his subscription and still is a non-resident and insolvent.

That the Keystone Iron Company is insolvent, its real estate was sold by the sheriff in 1876; that the last Board of Directors were elected April 10th, 1876; and the last meeting held April 7th, 1877.

That the plaintiffs severally recovered judgment March 4th, 1881, against the Keystone Iron Company, as follows: Hahn & Bro., for $1,478.51; James Young, for $3,042.19; Joseph Morrison, for $2,392.19; B. F. Riegel for $2,532.49; Edward H. Green, for $3,155.32.

That executions were issued on said judgments respectively, which were returned "*nulla bona.*"

That the only available assets for the payment of plaintiffs' judgments are the balances due for unpaid stock subscriptions.

That the Keystone Iron Company has failed to enforce payment from defendants named in the bill, and defendants have refused, although often requested, to make payment.

The orators pray relief as follows:

That the defendants other than the Keystone Iron Company be decreed to pay to them the balances of their unpaid stock subscriptions, with interest, with such further relief as the case may require.

The following is an abstract of the answer:

The answer admits the incorporation of the Keystone Iron

Company, the completion of the furnace, the subscriptions to the original capital stock, and the increase thereof as set forth in the bill; but avers that the increase of said capital stock was without authority of law. That if valid, the defendants subscribed upon the further parol condition that the subscriptions were not to be called in or payable until the furnace was put in blast by the company, and to be used only for working capital. That the furnace was not put in blast by the company.

That the subscriptions, by the written condition, were not to be binding until $75,000 had been subscribed, and that as the subscriptions of Catharine Bercaw and Laura W. Robertson, as married women, were void and not enforceable, and their shares were needed to complete the subscriptions to the full amount of $75,000, none of the said subscriptions are binding.

That the Keystone Iron Company had brought suit in the Common Pleas against each of these defendants except Welch & Co., to recover the balance due of unpaid subscriptions, and that the said suits were then pending at the time of the filing of said answer, said company never having refused or failed to bring and prosecute the same.

A replication was filed and the matter was referred to William C. Shipman Esq., as Examiner and Master. After taking the testimony he reported *inter alia* that a decree should be entered that the said Cornell & Michler do pay the sum of $835.50 to the respective plaintiffs severally, in the following amounts:

| | | |
|---|---|---|
| To Joseph Morrison, administrator | . | $160 08 |
| " B. F. Riegel . . . . | . | 169 46 |
| " James Young . . . . | . | 203 57 |
| " Hahn & Brother . . . | . | 98 94 |
| " Kate S. Green, administratrix . | . | 204 45 |

Cornell and Michler filed exceptions to this report which were dismissed by the court, ALRRIGHT, J., and the above decree recommended by the Master, entered. The following facts of the case are taken from this opinion:

On April 23d, 1881, Hahn & Brother, James Young, B. F. Riegel, Joseph Morrison, administrator, etc., of Joseph Morrison, deceased, and Kate Green, administratrix, etc., of Edward H. Green, deceased, filed their bill against Welch & Co., Cornell & Michler, Mack & Edelman, Peter F. Arndt, and the Keystone Iron Company. The plaintiffs are creditors of said corporation. In the early part of 1881 they obtained judgment against said corporation and issued *fi. fas.*, to which returns of *nulla bona* were made; thereafter this bill in equity was filed. The defendants, Welch & Co., Cornell & Michler,

Mack & Edelman, and Arndt, had subscribed for shares of the capital stock of the corporation, and it is alleged that a portion of the sums owing by virtue of the subscriptions are unpaid. The relief prayed for is that it be decreed that the defendants pay the amounts respectively owing by them upon their subscriptions to the plaintiffs in satisfaction of said judgments. A decree, *pro confesso*, against the corporation was entered.

From the admissions in the answers, and from the evidence, it appears that the Keystone Iron Company became a corporation on March 24th, 1873, under the Act of June 16th, 1836, P. L. 799, entitled "An Act to encourage the manufacture of iron," etc., and the supplements thereto of June 29th, 1852, P. L. 978, and of April 1st, 1853, P. L. 269. The original capital was $100,000, in shares of $50, which seems to have been paid in full. On July 18th, 1873, at a stockholders' meeting, it was resolved to increase the capital stock $100,000. Thereupon 138 shares were subscribed. At a meeting of the Board of Directors, held July 7th, 1874, it was determined "that we increase our subscriptions to $175,000, and that unless said amount is subscribed it will not be binding on said subscribers." Then a subscription list was opened, which set forth that "we, the undersigned, hereby agree to subscribe for the number of shares of the capital stock of the Keystone Iron Company, set opposite our respective names; provided, however, that no subscription hereto shall be binding unless the amount of the said subscriptions added to the amount of the subscriptions heretofore made shall equal one hundred and seventy-five thousand dollars of the capital stock of said company." On that list subscriptions for 1362 shares were obtained, making, with the 138 shares theretofore subscribed without condition, 1500 shares, representing $75,000, which, with the $100,000 of original subscriptions, made up said $175,000. Upon said conditional list the defendants subscribed for shares as follows: Welch & Co., 295; Cornell & Michler, 30; Mack & Edelman, 98; P. F. Arndt, 20. Arndt paid nothing upon his subscription; the other subscribing defendants paid a portion. The real estate of the company was sold under a *vend. ex.* on April 11, 1877; the corporation was then and has since remained insolvent. The last meeting of the directors was held on April 7th, 1877. All the stock was subscribed for before November 21st, 1874, when the directors resolved to call in 10 per cent. on the new subscriptions. On December 26th, 1874, this was modified to a call of 10 per cent. a month until otherwise directed. Among the subscribers to said aditional stock were Laura W. Robertson for 4, and again for 5 shares; Catharine Bercaw for 12 shares, and Abraham Fraley for 10 shares;

on these subscriptions nothing has been paid, except that the 4 shares subscribed for by Laura W. Robertson were paid in full. Said Laura and Catharine were at the time of the subscribing, and still are, married women; said Fraley, at the time of the filing of the bill was insolvent, and he and Mrs. Robertson were then non-residents of this state. When this proceeding was commenced there was owing on the additional subscriptions as follows: By Mrs. Robertson, $250; by Mrs. Bercaw, $600; by Fraley, $500; by John D. Paterson, $217.63; by Welch & Co.. $2,609.34; by Cornell & Michler, $700; by Mack & Edelman, $2,100, and by P. F. Arndt, $1,000.

The company erected a furnace for the purpose of making pig iron ; the work of building the furnace was going on when the additional subscriptions were taken ; the furnace was completed in 1876 ; the company never carried on the business of making iron, but upon the completion of the furnace leased it to Boyer, who then put it in blast and made pig iron.

The Master's minutes contain an admission by plaintiffs' counsel that there are creditors of the corporation other than the plaintiffs ; but none of them have obtained judgment nor submitted evidence to sustain a claim.

The material questions raised by the exceptions of the several defendants, are :

1. Whether there is jurisdiction—it being asserted that there is a remedy at law.

2. Whether there are proper parties—it being alleged that other creditors should have been joined with the plaintiffs and that the other delinquent subscribers for stock should also have been made defendants.

3. Whether the corporation had a right to increase its capital stock as was done, and if it had, whether the action for that purpose required by law was taken.

4. Whether the subscriptions were binding on the defendants, notwithstanding the coverture of Mrs. Robertson and Mrs. Bercaw.

5. Whether the subscriptions were binding upon the defendants, in view of the further condition set up by them, to the effect that they were not to be called upon to pay until the furnace had been put in blast by the company, and that the proceeds of the subscriptions were to go as working capital ; that this condition was by parol, made when the defendants respectively subscribed ; that this condition was not complied with.

6. Whether several of the plaintiffs who testified were competent as witnesses.

7. Whether the Statute of Limitations does not bar a recovery as to 40 per cent. of the alleged unpaid subscriptions.

8. Whether the decree respecting costs ought not to specify

what portion thereof each of the defendants, if a decree against them is entered, is required to pay.

Cornell & Michler took this appeal, assigning for error the entry of the above decree against them.

*W. S. Kirkpatrick*, for appellants.

1. The general rule is that a creditor who proceeds in chancery to enforce the liability of the shareholders of an insolvent corportion must bring his bill on behalf of all other creditors who may come in and establish their debts according to the course of a court of Chancery. Whilst liens and legal priorities are preserved, he does not obtain a preference over other creditors by the filing of such a bill, but the property of the corporation, or the sums due from other shareholders in respect of their individual liability, are sequestered for the ratable benefit of all the creditors : Thompson on Liabilities of Stockholders, § 351; Morgan *v.* New York, &c., R. Co., 10 Paige, 290 ; Mann *v.* Pentz, 3 N. Y. 415; Masters *v.* Mining Co., 2 Sandf. Ch. 301; Coleman *v.* White, 14 Wis. 700; Crease *v.* Babcock, 10 Metc. 525; Carpenter *v.* Bank, 14 Wis. 705 note; Umstead *v.* Buskirk, 17 Ohio St. 143, 118. The case of Lane & Burn's Appeal, 9 Out. 49, is decisive of the questions involved in this. See Patterson *v.* Lynde, 16 Otto, 519, and Ladd *v.* Cartwright, 7 Oregon, 329.

2. The condition expressed in the contract being for an increase of stock in a company already organized, was valid, and the company was bound to the performance of said condition : Caley *v.* Railroad Co., 30 Smith, 363 ; Railroad Co. *v.* Stewart, 5 Wright, 54; Railroad Co. *v.* Heckman, 4 C. 318; McCarty *v.* Selinsgrove Railroad Co., 6 Nor. 336.

The condition was not performed, because the valid subscriptions all taken together did not reach the amount required by the contract as a condition precedent to the enforceability thereof, being short of the limit by $850.

The contracts of a married woman are absolutely void, not merely voidable : Caldwell *v.* Walters, 6 H. 79.

A married woman cannot become a stockholder in a building association : Wohlbach *v.* Building Association, 3 Nor. 211.

The case of Anderson *v.* Lines, 12 W. N. C., is not authority for the right of married women to subscribe for stock, being decided under the peculiar language of the National Banking Act.

The subscriptions of these married women being unpaid are as no subscriptions.

Where a subscription is made on condition that a certain amount should be subscribed, it was held that the unpaid sub-

scriptions of insolvents, married women and infants should be excluded: Phillips v. Covington Bridge Co., 2 Metc. (Ky.) 219; Argell & Ames' Corp. (11th Ed.) § 543, note; Green's Brice's Ultra Vires, p. 106, note.

Nor can they be bound, because the plea of coverture can only be said to avail the married women. It must be borne in mind that this is a conditional subscription, and it is only binding in case the full amount is subscribed. Those of the married women being null, the condition of our liability has not been performed.

Nor need it be averred that these subscriptions were fraudulently taken, although it might well be insisted on that such was the effect of taking them and using them to piece out the required amount.

The case of Titusville Gas and Water Co. v. Custar, 13 Smith, 381, has no application, the principle there enunciated that fraud in taking worthless subscriptions must be shown. The language of the court is with reference to binding subscriptions which are not collectible through the pecuniary inability of the subscribers.

3. As to ten shares, there was a parol condition which has never been fulfilled.

It is well settled that a parol condition annexed to and made part of the contract of subscription as against the company is good and valid as if in writing: Miller v. Railroad Co., 6 N. 98; McCarty v. Selinsgrove R. R. Co., Id. 332.

4. The plaintiff's claims are barred by the Statute of Limitations. In case of a subscription for stock, if no calls are made by the company within six years from the date of subscription, the Statute of Limitations is a bar: McCully v. Pittsburg & Connellsville R. R. Co., 8 C. 25; Pittsburg & Connellsville R. R. Co. v. Byers, Id. 22; Pittsburg & Connellsville R. R. Co. v. Graham, 12 C. 77.

*Henry W. Scott (Frank Reeder* with him), for appellees.

1. The parties to the bill were proper. All the creditors need not be made plaintiffs; neither need all the delinquent stockholders be made defendants: Marsh v. Burroughs, 1 Woods, 463; Burns' Appeal, 9 Out. 49; Slaugh's Appeal, 10 W. N. C. 409; Bartlett v. Drew, 57 N. Y. 587; Hatch v. Dana, 101 U. S. 205; Ogilvie v. Ins. Co., 22 How, 380; Marsh v. Burroughs, 1 Woods, 68; Woods v. Drummer, 3 Mass. 308; McHose v. Wheeler, 9 Wright, 32; Crawford v. Rohrer, 1 Eng. and Am. Corp. Cases, pp. 75, 85-6.

2. There were two married women subscribing to the increase of capital stock. The subscription of Laura W. Rob-

ertson, wife of the superintendent of the company, was fully
paid.   Catharine Bercaw owed $600 for twelve shares.

When Cornell & Michler signed the subscription list they
had the names of these married women before them on the
books, where they had signed first.

If there was no scheme of fraud to obtain subscriptions from
irresponsible persons, the contracts of all subscribers may be
enforced : Custer *v.* Titusville Gas and Water Co., 13 P. F. S.
381.

" Where a party subscribes to the capital stock of a corpo-
ration upon condition that a certain number of shares shall be
subscribed for, it is not competent for him to introduce evi-
dence to show that that number had not been subscribed for
by persons pecuniarily responsible, unless it appears that the
corporation has acted in bad faith : "   Penobscot *v.* White,
41 Maine, 512.

The Master has found there was no evidence of an attempt
to piece out the list by fraudulent subscriptions.

All· these subscriptions were made, it is admitted, by the
answer, between July 18th, 1874, and December 24th, 1874.

On April 1st, 1874, an Act of Assembly was passed (P. L.
p. 45), which allowed married women to hold capital stock of
any corporation, and sell and transfer it the same as if un-
married.

Even if there had been fraud practiced upon the subscrib-
ers by obtaining a certain number of worthless subscriptions
to complete the list, it is too late for any stockholder to avoid
his liability on such ground, after the company has become
insolvent and the investment is found unprofitable, especially
so where the party alleged to be defrauded has not been
prompt in appealing to the courts for relief from his subscrip-
tion and denuding himself of his shares : Green's Brice's Ultra
Vires, 2d Ed. pp. 152, 336, 348-9; Ogilvie *v.* Knox Ins. Co., 22
How, 380 ; Upton *v.* Hansborough, 3 Biss. 417 ; Kelsey *v.*
Northern Light Oil Co., 45 N. Y. 505 ; Gloucester Bank *v.*
Salem Bank, 17 Mass. 33 ; Blodgett *v.* Morrill, 20 Vt. 509 ;
Sanger *v.* Upton, Assignee, 1 Otto, 56 ; N. Y. Exchequer Co.
*v.* DeWolf, 31 N. Y. 273 ; Vreeland *v.* N. J. Stone Co., 29 N.
J. Eq. 188, and note ; Upton *v.* Tribilicock, 91 U. S. 45 ; Tay-
lor on Priv. Corp., §§ 519, 521, 523, 744, and notes ; Graff *v.*
Steub. R. R. Co., 7 Casey, 489 ; Robinson *v.* Pittsb. & Con-
nellsville Gas, Coal and ·Coke Co., 19 P. F. S. 334.

" Between the company and the person whom they have
duped, the subject is clear, if we put the question on the sim-
ple ground that no one can be allowed to retain that which he
has acquired by fraud ; but as regards third persons, such per-
son is a *de facto* shareholder as long as he has not, from what-

ever cause, taken measures to denude himself of his shares, and . . . . . that as such as a member of the company he is subject to the company's liabilities:" Green's Brice's Ultra Vires, 2d Ed., p. 349; Oakes v. Turquand, L. R. 2 H. Lds. 325; Smallcomb's Case, L. R. 3 Eq. 769—affirmed in L. R. 3 H. Lds. 249; Brotherhood's Case, 31 Beav. 365; Perrett's Case, L. R., 15 Eq. 250; Story's Eq. Jur., §§ 1539 (a) 1546; McHose v. Wheeler, 9 Wright, 33; Reciprocity Bank, 22 N. Y. 17; Thompson's Liability of Stockholders, §§ 161-4, 170.

3. "Where the name of an individual appears on the stock book of a corporation as a shareholder, the *prima facie* presumption is that he is the owner of stock, and in an action against him by or on behalf of creditors, the burden of proving he is not such rests on him:" Taylor Priv. Corp., § 740; Turnbull v. Payson, 95 W. S. 418.

Admitting that the parol condition was a valid one, and could be enforced, both the Master and the learned court below have found as a fact that it was literally fulfilled.

If it had not been performed, the condition would not have availed against creditors after insolvency: Bunn's Appeal, 9 Out. 49, p. 62.

A parol condition not common to all of the subscribers cannot be enforced: Miller v. Hanover Junction & Susq. R. R., 6 N. 95; McCarty v. Railroad, 6 N. 332; Robinson v. Pittsb. & Con. R. R. Co., 8 C. 334; Graff v. Pittsburg & Steubenville R. R. Co., 7 Casey, 489; Barrington v. Same, 10 C. 358.

Neither was the evidence of the parol condition sufficient to contradict the written paper signed: Kennedy v. Plank Road Co., 1 C. 224; Thorne v. Warflein, 4 Out. 519; Martin v. Berens, 17 P. F. S. 459.

Mr. Justice TRUNKEY delivered the opinion of the court, October 4th, 1886.

The Keystone Iron Company was incorporated March 24th, 1873, under the Act of June 16th, 1836, and its supplements. Its capital stock was originally $100,000. By the unaminous resolve of the stockholders the capital was authorized to be increased $100,000; and in 1874 it was increased by additional subscriptions amounting to $75,000. A small part of the increase was unconditional; the greater part was on condition that no subscription should be binding unless the total subscriptions to the captial stock should equal $175,000. On the face of the subscriptions they equalled the stipulated sum. All the additional capital was subscribed before December 26th, 1874, and on that date the treasurer was instructed to call in ten per centum per month until otherwise directed. In pursuance of this call of which notice was given within a week thereafter to

4 AMERMAN—11

all the subscribers, all said stock was paid except $10,161 and $8,811, of that sum stands against the defendants. The balance, $1,350, was subscribed by Mrs. Robertson, $250 ; Mrs. Bercaw, $600; and A. Fraley, $500. Mrs. Robertson and Mrs. Bercaw are married women, and Fraley is insolvent.

The company erected a furnace at a cost exceeding $175.000. Its real estate and tangible personal property were sold at sheriff's sale in 1876. The plaintiffs are judgment-creditors of the company and executions issued on their respective judgments were returned "No goods." A board of directors has not been elected since 1876, and the last meeting of directors' was April 7th, 1877. The only assets of the company for payment of its debts are the unpaid subscriptions to its capital stock.

The foregoing facts are averred in the bill, some of which are admitted and none denied in the answer, except that it is denied that the subscriptions are binding on defendants. All the defendants signed the subscription after the signatures of Mrs. Robertson and Mrs. Bercaw. The subscription is referred to as part of the bill, and none answers that he did not know they were married when he subscribed. Nor does any defendant aver in answer that he notified the company, or other subscribers, that he was not bound by, or would not pay, his subscription by reason of non-performance of the condition, or for other cause. Arndt's signature is the second after Mrs. Robertson's, and the fifth after Mrs. Bercaw's. It is not denied in answer that all the subscribers had due notice of the call; nor is bad faith on the part of the company, or its agents, alleged.

T. R. Sitgreaves was a member of the firm of Welch & Co. ; E. B. Mack of Mack & Edelman ; and A. Keller Michler, of Cornell & Michler. Sitgreaves and Mack were directors in 1874, and were continued in that office thereafter while the company did business. The minutes show that they were attentive and active in their official duties. Michler was at the stockholder's meeting on April 13th, 1875 ; also on April 11th, 1876, when he was one of the committe to make nominations and prepare a ticket. Welch & Co. and Mack & Edleman made three subscriptions to the increase of stock; and Cornell & Michler, two ; each firm paid a considerable part of its subscriptions. It is apparent, viewed in connection with the circumstances that their last subscriptions were to make up the sum of $175,000.

It is proved and scarcely controverted that when the capital of $100,000, had been expended, the furnace was not nearly completed, and the increase of $75,000 was for the purpose of its completion. That purpose seems to have been well under-

stood by the subscribers. Dr. Arndt, one of the defendants, testifies: " Abraham Bercaw came to me and said, Doctor, we have to have some more money. I said, What for, and he replied, We have the furnace all ready with the exception that we must raise $175,000, and each stockholder must subscribe in order to put the furnace in running order. If we don't succeed in raising the $175,000, you won't have to pay." Every interested party knew that the sum of $75,000 was required to put the furnace in running order.

The Act of 1836 provides, " That the stockholders in the corporation to be created under this Act, shall be individually liable for the amounts of capital stock by them respectively subscribed in such corporations, which have not been paid in : " P. L. 799.

This suit is to enforce that liability. Nothing more is demanded of each defendant than so much of his subscription as remains unpaid. The plaintiffs put little stress on the claim that they gave credit on the faith of these subscriptions. They are creditors, and as such demand that part of the trust fund for payment of the debts of the company which remains in the hands of the defendants. There are other creditors of the company, but none of them have asked to be made parties. They might have come in as plaintiffs, had they chosen to do so, and if they stand aloof no party in the litigation shall thereafter suffer by their action. For reasons satisfactory to themselves, the defendants have not pressed for the appointment of a receiver, or that anything else be done in the interest of all the creditors. The plaintiffs are not bound to prosecute the suit in the interest of others who might if they would come in as co-plaintiffs. Nor was it necessary to make all stockholders, who had not paid, defendants. The burden does not rest on the plaintiffs to adjust the equities between persons who individually hold portions of the trust fund, especially where each denies that he holds any part of the fund. Every person who holds any of the fund is bound to pay all that he holds, if necessary for satisfaction of the plaintiff's debt, although he may have right of contribution. Under the facts in this case, the bill praying for direct payment by the defendants to the plaintiffs, is not fatally defective, but is sanctioned by precedent. Of the numerous cases referred to by the Master and court below only two will be noted.

The capital of a corporation is a fund to which creditors look for payment of their claims, and if the stockholders diminished that fund by dividing any part of it among themselves, without first providing for payment of all debts of the corporation, they receive it on the implied trust to pay the liabilities. And a creditor who has exhausted his remedy at

law, is clearly entitled to the assistance of equity to aid him in obtaining satisfaction of his claim out of the assets in the hands of the stockholders who possess them. The right of the claimant to immediate and entire relief is not to be delayed by any questions of expediency, or of the ultimate rights of the defendants to contribution. Each is bound to contribute his part of the trust fund *in toto*, and it is unnecessary that the creditor make all who receive the trust fund parties: Staug's Appeal, 10 W. N. C., 409. Can it be said that the controlling principles in that case are inapplicable to this?

In Hatch *v.* Dana, 101 U. S. R., 205, upon review of the authorities by Justice STRONG, it was ruled that creditors of an incorporated company who have exhausted their remedy at law, can in order to obtain satisfaction of their judgments, proved in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription, although no account is taken of the other indebtedness of the company, and the other stockholders are not made parties.

Nothing in Lane and Bunn's Appeal, 14 W. N. C., 193, is inconsistent with the doctrine in Staug's Appeal, or in Hatch *v.* Dana. In that case John Maxwell and others, suing as well for themselves as for all other creditors who might become parties, brought suit in equity against the corporation and the holders of its capital stock, to compel payment of the unpaid capital. In the elaborate opinion, at the outset, Justice GREEN thus states the points for consideration: "The chief contention before the Master as in this court, was upon the liability of the stockholders in this proceeding. It was contended on behalf of the defendants that they could not be called upon by bill in equity, as proposed in this case, for two reasons: First, because the complainants have a complete and adequate remedy at law specifically provided by the Act of April 29th, 1874, under which the company was incorporated; and second, that the plaintiff, John Maxwell, the principal creditor, had a complete and adequate remedy by attachment in execution upon his judgment." These were the defences considered, and it was clearly shown that a bill in equity was the proper proceeding.

Doubtless there are cases where the action should be by or for all creditors, and against all persons liable to pay, or to contribute to payment of the debts. And cases may arise when, upon proper application, creditors who were not parties in the first instance will be made parties, and where all persons liable to contribute must be made defendants.

The second point urged by appellants, is, that the subscription having been made on condition that the whole amount

Am
of the additional $75,000, should be subscribed, and part thereof having been made by married women, is not binding. Both their subscriptions were made on the same condition, and a part of the stipulated sum. They knew the condition of the subscription, that it contained the names of Mrs. Robertson and Mrs. Bercaw, and for aught that appears they were as well informed respecting those persons as any officer or other stockholder in the company. Cornell says the subscription was to complete the furnace; they did not have money enough to complete it. The appellants paid on the twenty shares first subscribed. What difference does it make whether the payment was made on the first or second? Each was part of the same sum. If one was binding so was the other. By paying the first calls on one subscription they waived the written condition. Their payment of call, their active part in the meetings of stockholders, their silence respecting non-liability until after payment of more than seven-tenths of the whole additional subscription, forbid that they may now evade payment of the balance on the ground that one seventy-fifth part of the subscription was inadvertently received from married women. They paid part, others paid all they subscribed. Had the business proved successful the appellants would have been entitled to every share of stock for which they agreed to pay. They must bear their share of the burden in common with the shareholders who paid in full, while they were actively and openly recognizing their liability.

The third ground of defence relates to the ten shares last subscribed, "having been made upon the further parol condition that it was not to be called in until the furnace was put in blast by the company, and to be used only as working capital." As shown by the testimony of one of the appellants, none knew better than they that the increased subscription was needed and made for the completion of the furnace. They do not pretend that the parol agreement was such as to vitiate the subscription already made. The parol agreement related to further subscriptions, made after more than two-thirds of the stipulated sum had been subscribed. It is a part of the $75,000, but the time of its payment was agreed to be postponed until completion of the furnace. A disinterested witness, called by defendants, testifies: "At the time the subscriptions were made the question had not yet arisen whether the furnace should be put in blast by any other person than the company. The expression used was that the subscriptions should not be paid until the furnace was put in blast. The understanding was that the furnace was to be put in blast by the company. Upon that day nothing was said about putting

[Cullmans *v.* Lindsay.]

in the blast by the company. The subscription was ·to be used as working capital."

In view of all the evidence, that is a fair statement of the oral promises at the time the appellant subscribed for. the ten shares.—Dr. Arndt was not then present. Debts were contracted for completion of the furnace, the unpaid capital was insufficient for working capital, the furnace was leased by authority of the stockholders, and the tenant put it in blast in 1876. The court did not err in holding that the condition was performed according to its reasonable intendment.

In any view the subscription is not void, or voidable. Its condition is stated in the answer thus: "That the same was not to be called in or payable until the furnace of said company was put in blast by the company, and that the same should only be used for working capital." It was due when the furnace was put in blast. It was payable before it could be used for working capital. If the company failed to pay its debts, the creditors could demand it from the shareholders as soon as due and payable. The company had right of action for its recovery immediately after it became due.

No false representation of fact is alleged, and the contract is not voidable. A failure on the part of the corporation to comply with the special terms of a subscription for shares, is merely a cause for an action against the company: Morowetz on Corp. § 303. This principle will surely apply when the promise is to use the money after its payment as working capital.

Upon the appellants' own contention and showing, the money for the ten shares did not become due and payable until in the year 1876. The bill was filed April 23d, 1881. All the calls on the prior subscription for twenty shares, made more than six years before the filing of the bill, were paid. The Statute of Limitations is not a bar to any part of the demand.

> Decree affirmed, and appeal dismissed at costs of appellants.