# Swearingen *v.* Sewickley Dairy Company.

*Statute of limitations—When statute begins to run.*

On an obligation for the payment of money on demand, the statute of limitations begins to run at once. Suit is a sufficient demand,· and must be brought within six years.

Where the contract is to pay on the future performance of a condition or the happening of an event, or at a certain time after demand, there a demand is necessary to a right of action, and the statute does not begin to run until demand is made.

Whether there is a third rule that if demand is necessary it must be made within six years from the contract, not decided. Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22; Franklin Savings Bank v. Bridges, 20 W. N. C. 43, commented upon, and Lane's App., 105 Pa. 49, explained.

It seems that Franklin Savings Bank v. Bridges, 20 W. N. C. 43, is not overruled by Lane's App., 105 Pa. 49. No questions under the statute of limitations arose in Lane's Appeal, or were passed upon by the court.

*Statute of limitations—Corporations—Unpaid stock subscriptions—Insolvency of corporation.*

The right of action of a creditor of a corporation against stockholders for unpaid stock subscriptions accrues upon the fact of the insolvency of the company shown by an assignment for the benefit of creditors, and the statute of limitations begins to run from that date.

The status of a stockholder as holder of a fund liable at least contingently to the creditors, must be fixed at the time and by the fact of the ascertainment of insolvency. It is the general rule that insolvency fixes the relative rights of all the parties concerned. From that moment the unpaid subscriptions become part of the assets for payment of the creditors. It is true they are special, or as they may be called reserved assets not to be paid in distribution until the insufficiency of the other assets is shown, but this is no reason why the creditors may not proceed at once to show that fact. Per MITCHELL, J.

Argued Oct. 22, 1900. Appeal, No. 57, Oct. T., 1899, by A. M. Byers, from decree of C. P. No. 1., Allegheny Co., Sept. T., 1899, No. 17, on bill in equity in case of T. Brent Swearingen, Assignee of Fleming Brothers and such others as may become parties hereto, v. The Sewickley Dairy Company, A. M. Byers et al., Stockholders. Before McCOLLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Bill in equity by creditors against a corporation and its stock-

holders to enforce the payment of an alleged balance due on stock subscriptions. See next case.

The facts appear by the opinion of the Supreme Court.

The court entered the following decree:

1. That the defendants hereinafter named are respectively liable to the Sewickley Dairy Company and creditors thereof for the unpaid subscriptions upon the capital stock of the said corporation, subscribed for and held by them, in the amounts set opposite their respective names, and that judgments be entered against them for said amounts, and that they be directed to pay the same to T. Brent Swearingen, heretofore appointed receiver by this court in this matter, whose powers are hereby extended, if necessary, to recover these claims.

The following are the names of the defendants and the amounts due from them, to wit:

\*        \*        \*        \*        \*        \*        \*        \*

A. M. Byers,    -    -    -    -    -    -    - $2,500.

\*        \*        \*        \*        \*        \*        \*        \*

*Error assigned*, amongst others was the decree of the court.

*John S. Wendt*, with him *D. T. Watson*, and *Johns McCleave*, for appellant.—The right of action to recover the alleged balance of unpaid stock subscription upon the stock held by A. M. Byers is barred by laches: Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22; McCully v. Pittsburg, etc., R. R. Co., 32 Pa. 25; Pittsburg, etc., R. R. Co. v. Graham, 36 Pa. 77; Pittsburg, etc., R. R. Co. v. Plummer, 37 Pa. 413; Franklin Savings Bank v. Bridges, 20 W. N. C. 43; Modern Life Ins. & Imp. Trust Co. v. Keller, 3 Pa. C. C. R. 118; Amer v. Armstrong, 6 Pa. C. C. R. 392; Shackamaxon Bank v. Dougherty, 20 W. N. C. 297.

The assignee of this corporation might have sued the stockholders for unpaid subscriptions to capital stock: Yeager v. Scranton Trust Co. & Savings Bank, 14 W. N. C. 296; West Chester & Phila. R. R. Co. v. Thomas, 2 Phila. 344; Citizens' & Miners' Savings Bank & Trust Co. v. Gillespie, 115 Pa. 564; Milne's App., 99 Pa. 483; Taylor v. Whitman, 3 Grant, 138.

The fact that the assignment of the corporation created a trust fund for the payment of creditors, did not prevent the running of the statute of limitation against debts due to the corporation: Yorks's App., 110 Pa. 69; Light's Est., 136 Pa.

211; Milne's App., 99 Pa. 483; Reed v. Marshall, 90 Pa. 345; Kane v. Bloodgood, 7 Johns. Ch. 90; Todd's App., 24 Pa. 431; Buehler's Heirs v. Buffington, 43 Pa. 278; Jones v. Tuberville, 2 Vesey, 11.

There are no cases in Pennsylvania which, when carefully considered, contain any principle inconsistent with that established by the line of cases above cited.

The plaintiff in the original bill, the assignee of Fleming Brothers, is estopped to maintain his bill.

An assignee for the benefit of creditors is a mere volunteer and not a purchaser for value, he, therefore, takes the assigned property subject to all equities to which it would have been subject in the hands of the assignor: Luckenbach v. Brikenstein, 5 W. & S. 145; Swoyer's App., 5 Pa. 377; Garrison's App., 2 Grant, 216; Pierce v. McKeehan, 3 Pa. 136; Morris's App., 88 Pa. 368; McClurkan v. Byers, 74 Pa. 405.

In the absence of statutory or charter provisions, a corporation may agree with a subscriber to its stock to receive less than the par value therefor; and a creditor of the corporation, who becomes such with knowledge of such an agreement between the corporation and the subscriber, cannot require the subscriber, upon the insolvency of the corporation, to pay his stock in full: Rickerson Roller Mill Co. v. Farrell Foundry & Machine Co., 75 Fed. Repr. 554; Coit v. North Carolina Gold Amalgamating Co., 12 W. N. C. 272; Scovill v. Thayer, 105 U. S. 143; Fidelity Ins., etc., Co. v. West Penna., etc., R. R. Co., 138 Pa. 494.

But if there is a defense personal to the party who files a bill assuming to act for a class, this will defeat the bill, even though there are other parties who could have maintained the bill: Burt v. British National Life Assurance Assn., 4 De Gex & J. 173; Ffooks v. Southwestern Ry. Co., 1 Smale & Giff. Ch. 161; 1 Morawetz on Corp. sec. 264; Belmont v. Erie Ry. Co., 52 Barb. 663; Hubbel v. Warren, 8 Allen, 173; Central R. R. Co. v. Collins, 40 Ga. 616; Daniells's Chancery Pl. & Pr. (6th Am. ed.) *245.

*W. K. Jennings* and *T. M. Henry*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, January 7, 1901:
The dairy company on June 11, 1889, authorized a call for

twenty-five per cent of the subscription to stock, payable on July 1, in order to pay for a right of way contracted to be purchased from one Fleming, as specified in the resolution. Under arrangement with Fleming, the company, instead of collecting the twenty-five per cent and paying it to Fleming, issued the stock itself directly to him, credited with a payment of twenty-five per cent. The contract was not carried out, however, and the right of way was never conveyed by Fleming to the company. Between June 11 and July 1, the appellant bought from Fleming, paid in seventy-five per cent in cash and received the stock as full paid. On January 5, 1891, the company having become insolvent, made an assignment for the benefit of its creditors, and on June 30, 1899, the present bill was filed as a creditors' bill to collect the twenty-five per cent unpaid subscription. The first question that arises is whether the bill is barred as too late under the analogy of the statute of limitations.

The general rules are first, that on an obligation for the payment of money on demand the statute begins to run at once. Suit is a sufficient demand and must be brought within six years: Andress's App., 99 Pa. 421; Milne's App., 99 Pa. 483; Boustead v. Cuyler, 116 Pa. 551.

Secondly, where the contract is to pay on the future performance of a condition or happening of an event, or at a certain time after demand, there a demand is necessary to a right of action, and the statute does not begin to run until demand is made: Smith v. Bell, 107 Pa. 352; Eichman v. Hersker, 170 Pa. 402; Taylor v. Witman, 3 Grant, 138.

Whether there is a third rule that if demand is necessary it must be made within six years from the contract, has been both affirmed and denied in our cases, which are much at variance on the question. It was asserted in Laforge v. Jayne, 9 Pa. 410, and expressly held in Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22, McCully v. Pittsburg, etc., R. R. Co., 32 Pa. 25, Pittsburg, etc., R. R. Co. v. Graham, 36 Pa. 77, and Franklin Savings Bank v. Bridges, 20 W. N. C. 43. On the other hand it was denied generally in Taylor v. Witman, 3 Grant, 138, and expressly rejected in Girard Bank v. Bank of Penn Twp., 39 Pa. 92, Smith v. Bell, 107 Pa. 352, and other cases, on the distinction, however, between obligations for the simple pay-

ment of money and deposits or bailments, a distinction now well established. It was on this distinction that the case of Laforge v. Jayne, 9 Pa. 410, was said to be overruled in Finkbone's App., 86 Pa. 368. Probably all the cases may be reconciled by a careful regard to this distinction, but it is not necessary in this case to pursue the subject farther.

It was expressly held in Pittsburg, etc., R. R. Co. v. Byers, 32 Pa. 22, and the kindred cases already cited, that where no call is made upon subscriptions to corporate stock for six years, the liability of the subscriber is barred by the statute of limitations, thus placing such subscriptions under the first rule as above expressed. These decisions, however, have not commanded uniform assent, and it must be confessed that they are not easy to reconcile with the cases that hold that a call or assessment by the corporation is a necessary foundation for a right of action against the stockholder.

But Pittsburg, etc., R. R. Co. v. Byers and its kindred cases have never been overruled, and in Franklin Savings Bank v. Bridges, 20 W. N. C. 43, they were followed and the principle enforced in an action by the assignee for the benefit of creditors of an insolvent bank upon an assessment made more than six years previously, though in the mean time but also more than six years prior to the suit the bank had become insolvent and made an assignment for creditors.

The learned court below were of opinion that Bank v. Bridges was overruled by Lane's App., 105 Pa. 49. In this we cannot concur. The questions raised in Lane's Appeal related solely to the remedy and the opinion is devoted to the consideration of the defenses set up, first that the creditors generally had a complete and adequate remedy prescribed by the act under which the corporation was chartered, and secondly, that the principal creditor, filing the bill had a remedy by attachment execution on his judgment. In an elaborate opinion by the late Justice GREEN the whole subject was reviewed and in some quotations and observations upon them the statute of limitations was referred to, but it was always arguendo and by way of illustration. No question under the statute arose in the case or was passed upon by the court.

We have in the present case three dates from which it is claimed by appellant that the statute began to run, and all of

which were more than six years before the filing of the bill. First the assessment and call for the twenty-five per cent. If this had been a clear unconditional call the right of action would have been immediate and complete and the statute would have commenced to run. But as already stated the call was complicated by the transactions with Fleming. How the company came to turn over the certificates to him without getting the right of way of which they were to be the price or why suit was not brought for a conveyance of the way, or a rescission of the contract so far as within his control does not appear and is probably best accounted for by his position in the company. Secondly, if the date of purchase by the appellant be taken as the inception of his liability and the principle of Pittsburg, etc., R. R. Co. v. Byers be applied, the bill was too late. But thirdly, without going further into this subject and leaving the cases on the necessity of demand within six years open for consideration, when the question necessarily arises, we have for the third date the insolvency of the company as shown by its assignment for the benefit of creditors.

When does the right of action by the creditors for unpaid subscriptions accrue? Such subscriptions are a fund in the hands of the stockholders charged with a trust for the payment of the corporate debts. This trust does not depend on any statute but is deduced on general principles of equity from the premise that the capital is publicly pledged to those who deal with the corporation for their security: Lane's App., supra. So long as the corporation is solvent, the whole subscription is due in accordance with its terms and is payable when and as called for by the corporation. But when the corporation becomes insolvent, the contract between it and the subscriber is terminated and his debt to it then is only for such part of his subscription as is required to pay the corporate debts. It is a debt not to it in its own right but in the right of its creditors. But it would seem that the status of the stockholder as holder of a fund liable at least contingently to the creditors, must be fixed at the time and by the fact of the ascertainment of insolvency. It is the general rule that insolvency fixes the relative rights of all the parties concerned. From that moment the unpaid subscriptions become part of the assets for payment of the creditors. It is true they are special or as they may be called

reserved assets not to be put in distribution until the insufficiency of the other assets is shown, but this is no reason why the creditors may not proceed at once to show that fact. In Franklin Savings Bank v. Bridges, 20 W. N. C. 43, already cited, it was said by ALBRIGHT, J., in entering a nonsuit which was sustained by this court, " conceding that the unpaid subscription when realized would be a fund to be held for the benefit of the depositors and other creditors of the corporation, it is apparent that as soon as the assignment was made, the depositors and creditors were entitled through the assignee to demand that the unpaid subscriptions should be paid. . . . The creditors were at that time in the position of one to whom an obligation is due on demand, or who can make demand upon the doing of an act himself." In Terry v. Anderson, 95 U. S. 628, the charter of a bank provided that the stockholders should be individually liable for the bills or notes issued by the bank. The main question was on the constitutionality of the statute of limitations reducing the time for bringing suit, but it was also held that not only this liability, but the equitable liability for unpaid subscriptions to stock arose when the bank stopped payment, and the statute began to run from that time, though it antedated by nearly a year and a half the assignment by the bank for the benefit of its creditors.

No other case has been cited, nor has my own examination found any other in which it has been directly decided that on the insolvency of the corporation the creditor's right of action for unpaid subscriptions is complete and hence that the statute of limitations begins to run, but the general trend of judicial expression is in that direction. Thus in Wilbur v. The Stockholders of the Corporation, 35 Legal Int. 346 ; 18 Nat. Bankruptcy Reg. 178, CADWALADER, J., says, " Upon the insolvency of the corporation, the obligations of the stockholders thus at once become assets for the payment of its debts to such an extent as other assets are deficient." And in Myers v. Seeley, 10 Nat. Bankruptcy Reg. 411, TREAT, C. J., says, " If a company is insolvent the original mode of making call on stock is not to be pursued in the enforcement of the decree ; for the debt is then due on the stock without demand." Both these cases are cited in Lane's App. In Sawyer v. Hoag, 84 U. S. 610, the stockholder was a creditor of the corporation and sought to set

off his claim against his unpaid subscription, but the Supreme Court held this could not be done, MILLER, J., saying, "As soon as the company became insolvent, and this fact became known to the appellant, the right of set-off for an ordinary debt to its full amount ceased. It became a fund belonging equally in equity to all the creditors and could not be appropriated by the debtor to the exclusive payment of his own claim." And in Sanger v. Upton, 91 U. S. 56, it is said, "The assignee might have filed a bill in equity against all the shareholders jointly. But if the company is utterly insolvent in any event a separate action at law in each case is to be preferred. . . . If the contingency should occur that the assets realized exceed the liabilities to be met, the courts will see that no wrong is done to those adversely concerned."

All of the cases say that on a creditor's bill an account must be taken of the debts, assets and unpaid subscriptions in order to determine how much of the latter should be called. This clearly implies that the creditors need not wait until full administration has exhausted the other assets, but may proceed at once to ascertain and liquidate the stockholders' liability, even though payment may not be enforced until actual necessity has been shown. And the decisions in analogous cases are in harmony with this view. Thus in Cornell's App., 114 Pa. 153, a bill by judgment creditors of a corporation against certain stockholders on their unpaid subscriptions was sustained on the averments of insolvency of the corporation and the exhaustion of plaintiff's remedies at law, though no account had been taken of the other liabilities of the corporation, and other stockholders were not made parties, TRUNKEY, J., saying: "The right of the complainant to immediate and entire relief is not to be delayed by any questions of expediency, or of the ultimate rights of the defendants to contribution." A similar bill was sustained in Bell's App., 115 Pa. 88. In Citizens & Miners Savings Bank v. Gillespie, 115 Pa. 564, it was held that while ordinarily an account and assessment are necessary to fix the amount of the stockholders' liability on his unpaid subscription, yet "the necessity for this does not exist where the whole amount is required to pay the debts. . . . The assignee may sue at once for all that is required." And in Hatch v. Dana, 101 U. S. 205, a creditor's bill against a single stockholder was

sustained although no call had been made by the corporation, no account taken of the corporation's other indebtedness, and the other stockholders were not made parties. In all of these cases the fact of insolvency was held sufficient to support an action, and of course as soon as the right of action accrued, the statute of limitations began to run.

No sufficient reason is perceived why these principles should not apply to cases like that at bar, at least to the extent of ascertaining and liquidating the liability of the stockholders promptly and while evidence on disputed facts is presumably obtainable. The very numerous questions of contested liability particularly in the federal courts under the bankruptcy acts show that this is a matter of practical concern. And the interests of creditors not less than the rights of the stockholders are served by this view. If there is no right of action for unpaid subscriptions until full administration of all the other assets, then this case is an illustration of the delay and difficulties imposed on the creditors. Eight years and a half elapsed from the assignment till the filing of this bill, and in the mean time the creditors were exposed not only to the delay but also to the chances of failure of assets by the death and distribution of the estates of some of the stockholders, and the insolvency or financial inability of others besides all the vexatious questions of colorable or bona fide transfers of the stock. If a bill had been filed in 1891 averring insolvency and entire insufficiency of other assets, it is clear that it would not have been demurrable, and the final determination of how much of the unpaid subscriptions should be assessed and collected might well have been entrusted to a court quite competent to settle it with equity to all parties.

We are of opinion therefore that not only is the case of Franklin Savings Bank v. Bridges an express authority, but also that it is supported by correct reasoning from admitted principles. The right of action of the plaintiff, whatever it was, accrued upon the fact of insolvency of the dairy company shown by the assignment for the benefit of creditors, and the statute of limitations began to run from that date. The bill therefore was too late.

The decree is reversed and the bill directed to be dismissed with costs.