## William G. Johnston, Trading as Wm. G. Johnston & Co., Plffs. in Err., v. United Presbyterian Board of Publication.

Where a verdict is taken subject to the opinion of the court on a question of law reserved, to authorize the court to enter judgment *non obstante veredicto* the record must show what the question of law was and the facts on which it arose, and such judgment cannot be entered upon a question of law not included in any question reserved.

Although this court may, when it reverses a judgment *non obstante veredicto*, enter judgment for the plaintiff for the amount found by the jury, yet if it appears that that would work injustice to the defendant, and the record is imperfect, this court will award a *venire facias de novo*.

(Argued October 29, 1886.  Decided November 15, 1886.)

October Term, 1886, No. 108, W. D., before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.  Error to the Common Pleas No. 1 of Allegheny County to review a judgment for defendant *non obstante veredicto* in an action of debt to recover one half the cost of building a party wall.  Reversed.

NOTE.—The act of March 28, 1835 (P. L. 88), gave to the courts of Philadelphia county the power to reserve questions of law.  By the act of April 22, 1863 (P. L. 554), this provision was extended to all of the counties of the state.

The appellate court may enter judgment for the plaintiff, where it reverses a judgment for the defendant entered *non obstante veredicto.*  Henry v. Heilman Bros. 114 Pa. 499, 6 Atl. 921; Chandler v. Commerce F. Ins. Co. 88 Pa. 223.  But a venire will be awarded, where such an order would work harm to the defendant (Central Bank v. Earley, 115 Pa. 359, 10 Atl. 33; Patton v. Pittsburgh, C. & St. L. R. Co. 96 Pa. 169) ; or where a motion for a new trial is pending and undetermined (Freiler v. Kear, 126 Pa. 470, 3 L. R. A. 839, 17 Atl. 668, 906).  But it was said in this case that it was not intended to establish a rule of practice.  If no order be entered by the appellate court on reversing, the plaintiff should move therein for judgment.  Currier v. Bilger, 12 Pa. Co. Ct. 348, 2 Pa. Dist. R. 278.

Where the verdict is entered for plaintiff and is reversed, a *venire facias de novo* will be ordered.  Wharton v. Williamson, 13 Pa. 273.

At the trial in the court below defendant, *inter alia,* presented the following points:

2. There is no evidence in this case that the defendant used the party wall erected by plaintiff, by building into or against it, or in any way using it for any new building or structure; therefore defendant is not liable in this action, and the plaintiff cannot recover.   Refused and reserved.

3. The act of assembly of April 8, 1872 (P. L. 986), imposes no duty or liability upon the owner of an adjoining lot to pay a moiety or any other portion of the cost of a party wall erected by the owner of the other adjoining lot until the former shall use said wall by building into or against it, or in some way using it for a new building or structure; and in case of such uses, he is bound to pay for only so much of it as he may desire to use or does use.   Refused *pro forma* and reserved.

A verdict was directed and entered as follows:   "December 10, 1885, verdict for the plaintiff in the sum of $1,847.29, subject to the opinion of the court on a question of law reserved."

The facts fully appear in the following opinion of the court below by Stowe, J., after argument on the question of law reserved:

"The undisputed evidence in this case was as follows:   In August, 1835, one Reese Jones was the owner of the lots now belonging to the parties in this case, and at that date conveyed to Reese R. Jones, defendant's vendor, the portion of defendant's property now adjoining plaintiff's lot, as follows:   'Beginning at the center of Madison alley and running parallel with Hand street (now Ninth street), and fronting on said street 50 feet and 15⁄8 inches, more or less, to the center of the partition wall of the old mansion house, thence down center of said alley, etc., to place of beginning.'   The defendant's building, which was on this lot at the time this contention arose,—was erected by it in 1871, and by permission of —— Loomis, the then owner of the plaintiff's lot, it removed the then existing wall and built a new substantial foundation of stone and brick wall, upon the site of the former foundation wall as regards plaintiff's lot, but extending a greater width upon defendant's lot, the said wall having a total thickness of 30 inches, 12 inches thereof being upon plaintiff's ground and 18 inches upon defendant's ground, —inches of the latter being built of brick, and, upon the portion

of said foundation wall and entirely within the defendant's line, is erected thereon a substantial brick wall, suitable for its own building and purposes, and which was in safe and good condition as to said purposes at the time plaintiff commenced proceedings in this case.

"In this condition of things plaintiff, in the spring of 1884, tore down the dwelling houses theretofore standing upon his lots, for the purpose of erecting thereon a large, five-story, brick building for business purposes, and then discovered that the wall between his old building and the building erected and owned by defendant was used for the benefit of both buildings, the joists from both being supported by the same brick wall, and that the foundation wall was upon both lots and extended beyond the line of plaintiff's property some 12 inches or more. Plaintiff, considering that said wall was unfit and unsafe for the purposes of his new building, then notified the building inspector of the city of Pittsburgh, as provided by the act of assembly of April 8, 1872, 'to regulate party walls in the city of Pittsburgh, of his desire to have the wall examined, etc.    Thereupon the inspector gave notice to the defendant as required by the act, when he would meet the parties upon the premises.   At a time mutually satisfactory, he afterwards met the parties and made an examination of the wall and appurtenances as required by law, and in due course decided and reported by writing to defendant, that he found said wall not sufficient for the building proposed by plaintiff, and that the whole of said wall should be torn down and a new one built, etc., and that the said board of publication (defendant) bear one half the cost of taking down of material and labor required in the erection and removal, said expense to be paid to said Wm. G. Johnston (plaintiff); 'so much as may be used for the building now on the premises to be paid at present, the remainder at such time as defendant might use a greater portion of said wall.'

"The inspector afterwards, and without further notice to defendant, in April, 1885, estimated the cost of that portion of the wall built by Wm. G. Johnston (plaintiff) in pursuance of the foregoing proceedings, and fixed the amount to be paid at once to plaintiff, at $1,789.15.    Defendant refusing to pay this, suit was brought, and upon trial these facts being shown by the evidence and undisputed, a verdict was taken founded upon the inspector's report as to amount of claim (no other evidence of

cost being given) for $1,789.15 and interest, subject to the opinion of the court upon the questions of law reserved, upon the points of law presented by defendant, *pro ut* same.

"The second and third points raise the question of defendant's liability, arising out of the fact that its building as it now stands was erected before the party wall was built, and whether, under the act of assembly, a liability for a part of the expense of the party wall arises before a new building is erected by defendant, or a portion of the wall used beyond the extent of the original wall which supports defendant's building, and was torn down.

"Upon these questions we think the law is with plaintiff.

"The first and fourth points raise the question of the building inspector's right to determine the cost of the party wall, and the proportion thereof to be paid by the original owner and grant a certificate to plaintiff therefor without at least forty-eight hours' notice, etc.

"Unless such power is distinctly given by the act, or arises by necessary implication, it seems to me that it should not be allowed.    The act, at best, is extremely arbitrary and in contravention of common-law right, and should not be extended beyond its fair intendment.

"Upon an examination of the act we find that the first, second, third, and fourth sections, while declaring that 'any person desiring to erect any house or building in the city of Pittsburgh, and who may desire to erect therewith a party wall, to be used in common,' etc., and making provision for proceeding thereunder, does not comprehend such a case as the one under consideration, but seems to be limited to cases where no party wall previously existed.

"The fifth section, however, covers this case and authorizes the inspector, where there is an existing party wall, to decide, 'whenever the same shall in whole or in part be unfit or unsafe for the purpose of erecting a new building or buildings upon the adjoining lot, what, if any, alteration or repairs shall be made in the old wall, and whether it is necessary that the whole or any part, and if so what part, of the party wall shall be torn down and a new one erected for the purposes of a new building which either owner may desire to erect, which decision shall be final and conclusive upon all parties, requiring notice to be given by the inspector of his examination of the wall, as provided in

the first section; it then declares: 'Said inspector shall also determine in what proportion the cost of repairing or of tearing down part or the whole of the old wall and the erection of part or whole of a new wall shall be borne by the respective owners of said lots, and such decision shall be conclusive upon all parties.'

"Here distinct provision is made that the inspector shall have absolute power to determine the question of tearing down, etc., of the old wall, and also to decide the 'proportion' or share of the cost incident thereto to be borne by the respective owners; but it nowhere declares that he shall ascertain or fix the amount of the cost, as provided in § 2, in regard to cases falling within the first section. It, however, is urged by plaintiff that the second section requiring forty-eight hours' notice does not apply to this case, and that no further notice is required than the original notice given by the inspector of the time that he would make the 'examination' of the old wall; and such seems to be a fair interpretation of the act, if the power to fix the amount is conferred. But I am of opinion that the inspector has no power to fix the amount to be paid in such case as this at all, and that having determined the proportion of cost each party is to bear, if the parties cannot agree upon the amount, the only remedy is by action at law in the ordinary way, allowing the jury to determine the cost of the work. Being of opinion that, under the question raised and reserved under defendant's first and fourth points, the plaintiff has no right to recover in this action, it is now ordered that judgment be entered for defendant *non obstante veredicto*, upon the question of law reserved, on payment of verdict fee."

Judgment was entered for defendant *non obstante veredicto*, and plaintiff took this writ, assigning as error the action of the court: (1) In not spreading upon the record the question of law to be reserved; (2) in entering judgment for the defendant *non obstante veredicto* upon a question of law not included in any question reserved; (3) in making the following order: "It is now ordered that judgment be entered for defendant *non obstante veredicto,* upon the question of law reserved, on payment of verdict fee;" (4) in not directing judgment to be entered for the plaintiff upon the verdict.

*John Dalzell* and *H. J. Bigger,* for plaintiff in error.—The facts upon which the questions arise should be found by the jury, or agreed upon by the parties, and should be distinctly stated, as well as the questions raised upon them; and the judgment to be pronounced upon their solution should also be specified, as in a case stated.   Robinson v. Myers, 67 Pa. 9.

The omission to make the point reserved a matter of record is not cured by a statement of the reservation in the opinion of the court filed long afterwards, on entering judgment.   The opinion is no part of the record proper.   Buckley v. Duff, 111 Pa. 227, 1 Cent. Rep. 909, 3 Atl. 823.

A valid reservation of a question of law on the trial of an issue of fact must be a question of law solely.   It cannot be a question of law and fact mingled.   Ibid.

*R. E. Stewart* and *A. M. Brown* for defendant in error.

OPINION BY MR. JUSTICE STERRETT:

Tested by the recognized rules of practice, pertaining to the reservation of questions of law, etc., this record is fatally defective.   Inquirer Printing & Pub. Co. v. Rice, 106 Pa. 623; Buckley v. Duff, 111 Pa. 223, 227, 1 Cent. Rep. 909, 3 Atl. 823, and cases there cited.

We might, as has sometimes been done, reverse the judgment *non obstante veredicto* and enter judgment on the verdict in favor of plaintiff for the amount found by the jury; but, from what appears in the opinion of the court below, that would perhaps work injustice to the defendant, not only for the reason given by the court in support of its judgment, but for the further reason that defendant's second and third points are well taken, provided the facts of which they are predicated are true.

With such an imperfect record before us we cannot undertake to construe the act of April 8, 1872, on which plaintiff's claim is based.

Judgment reversed and a *venire facias de novo* awarded.