## Citizens and Miners Savings Bank and Trust Co. to use *versus* Gillespie.

1. A transferee of stock in a corporation who subscribes a subscription for stock, agreeing therein to pay the amount subscribed at such times and in such manner as the board of directors of the corporation may from time to time order and direct, thereby assumes the liability of an original shareholder.

2. A judge, at chambers, during vacation, may make an assessment or order authorizing the assignee, for the benefit of creditors, of an insolvent corporation, to collect the unpaid subscriptions on stock, as it is an exercise of chancery power, and the chancery side of the court is always open.

3. An offer of evidence which contains several subjects, some of which are admissible and some of which are not, may be regarded as a whole and rejected. The court may admit a part, and reject a part, but it is not ground for reversal if he rejects the whole.

4. In an action to recover the unpaid subscription on stock by the assignee for the benefit of creditors of an insolvent corporation, there can be no recovery, unless an assessment has first been made, or the jury find from the evidence, that the whole of the unpaid subscriptions is necessary to pay the creditors of the corporation.

5. In an action to recover the unpaid subscription on stock by the assignee for the benefit of creditors of an insolvent corporation, the defendant's counsel, against the objection of the plaintiff's counsel, was permitted to interrogate a witness as to the financial responsibility of a stockholder, the allegation being that he was a stockholder to the amount of $20,000, and that if his subscription were good the whole amount of the unpaid stock would not be needed. There was no evidence that he was a stockholder to the amount of over $5,000. *Held,* that it was error to admit evidence as to his ability to pay upon $20,000, even though the witness was not clear as to his responsibility.

February 22d, 1887. Before GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. MERCUR, C. J., and GREEN, J., absent.

ERROR to the Court of Common Pleas of *Lackawanna county:* Of January Term 1887, No. 30.

Assumpsit by The Citizens' and Miners' Savings Bank and Trust Co. to the use of W. D. Kennedy and F. B. Silkman, assignees for the benefit of creditors of said bank, against James W. Gillespie, to recover the balance due on a subscription to the stock of said bank. Plea, non-assumpsit, payment set-off with leave.

On the trial, before ARCHBALD, J., the following facts appeared:

The Citizens' and Miners' Savings Bank and Trust Company was incorporated by Act of Assembly, approved April 13th, 1872.

It was organized April 11th, 1873, and went into successful operation.

Stock was subscribed for by John B. Gillespie, who paid fifty per cent. upon it as called for by the directors, but no certificate was ever delivered to him, although one was made out and signed by the officers of the bank. It remained in the certificate book.

Thirty shares of this stock were transferred to James W. Gillespie, the defendant, who, upon receiving them, signed a subscription, as follows:

" We, the undersigned, do hereby subscribe for the amount set opposite our respective names of the capital stock of the Citizens' and Miners' Savings Bank and Trust Company, incorporated by an Act of the Legislature of the state of Pennsylvania, approved April 13th, 1872. We do hereby agree to pay the amount subscribed at such times and in such manner as the Board of Directors of said corporation may from time to time order and direct. Providence, Pennsylvania, Saturday, April 12th, 1873."

Signed, among others, James W. Gillespie, $3,000.

The certificate for this stock was issued and delivered to the defendant December 3d, 1873.

Semi-annual dividends were declared and received by the defendant up to February 1st, 1878, which amounted to forty-four per cent. of the money paid upon the stock.

On April 17th, 1879, the bank became embarrassed and made a general assignment of all its estate, assets and effects to W. D. Kennedy and H. Roberts, which was duly recorded. H. Roberts resigned the trust and F. B. Silkman was appointed assignee in his place by the court. The assignees gave bonds which were approved by the court, and entered upon the duties of their trust.

This action was brought December 6th, 1882.

During the trial the plaintiff offered in evidence a citation to W. D. Kennedy and F. B. Silkman, setting forth, among other things, that they had neglected to collect the unpaid subscription to the capital stock of the bank, asking for their removal on that ground.

Petition for citation was filed January 14th, 1882, upon which citation was issued the 27th of January, 1882. Answer of W. D. Kennedy and F. B. Silkman was filed February 6th, 1882, setting forth, among other things, that the question whether or not there should be an assessment for the unpaid subscription to the capital stock of said bank has been submitted to the court and still remains undecided, that they at all times heretofore have been and now are desirous to follow the directions of the court in this matter.

In connection with that, the order of HANDLEY, P. J., made in chambers, during vacation August 7th, 1882: " On consideration of the petition of the assignees of said bank, said assignees are authorized and directed to collect the unpaid subscription to the capital stock of said bank, and they are authorized to receive in payment of the unpaid subscription any just and legal claims against the bank." (Signed) JOHN HANDLEY, President Judge.

Objected to by defendant as irrelevant and immaterial. Objection sustained, and a bill of exceptions sealed for the plaintiff. (Twelfth assignment of error.)

The defendant's counsel against the objection of plaintiff's counsel was permitted to interrogate Mr. Kennedy, the witness on the stand, as to the financial responsibility of one Henry O. Silkman, the allegation being that Silkman was a stockholder to the amount of $20,000, and that if his subscription were good the whole amount of the unpaid stock would not be needed. There was no evidence that Silkman was a stockholder to the extent of over $5,000. The witness was not very clear as to Silkman's responsibility. (Ninth assignment of error.)

The court charged the jury, *inter alia*, as follows: [The

main questions at issue, to wit, whether the defendant was a stockholder who had subscribed for capital stock of the bank, and whether this balance of unpaid stock is fully necessary to meet the liabilities of the bank, are both denied by the defendant. These raise the issues then upon which you are to pass, and according as you determine these so your verdict will be for the plaintiffs or the defendant, as I shall explain to you.] (First assignment of error.)

[The first question then for you to determine is whether the defendant is a subscriber, or was a subscriber at the time of the failure of this bank to the capital stock of the bank; now, this is not simply whether he held stock in the bank, because of that there is no dispute; at the time of the failure of the bank, he held thirty shares, and still holds them, upon which one half, fifty per cent., had been paid; but the question is whether he subscribed for this stock.]    (Second assignment of error.)

The minutes of the organization of this bank in 1873 have been put in evidence before you.    By the recitals contained in them, it appears that the corporators, or a majority of them, having met, subscriptions were made to the capital stock of the bank, to the extent of $125,000.    While this may not be sufficient evidence to hold the parties who are recited in these minutes to a subscription, if they were contesting their position as original subscribers, still, under the evidence as it has been presented to you, I must hold, and so instruct you, that the original subscribers to the stock of the bank were the parties who are named in these minutes.

This, then, excludes the defendant from being held as an original subscriber.   His name is not recited there, and he does not appear therefore to have been one of the parties who subscribed to the original stock of the bank.

The method in which he actually acquired his stock is disclosed to you by the evidence, and there appears to be no particular dispute in regard to this.

One of the parties who subscribed to this $125,000 of original stock was the brother of the defendant, Mr. John B. Gillespie.   He subscribed for 100 shares or, at par value of $100, $10,000 of this $125,000, and subsequently he transferred of this 100 shares 30 shares to the defendant.   This transfer was made about the 2d of December, 1873, as I remember the evidence, and at that time Mr. John B. Gillespie marked upon the certificate, which had been made out to him for his original subscription, an assignment of 30 shares covered by that original subscription to the defendant, and upon the certificate back, which has been presented to you here, a regular

transfer of 30 shares of that 100 was made to the defendant,. and a stock certificate issued to him for it.

[Now then, if the case stopped there, the defendant would be virtually a transferee of stock, as it is called, that is, a person to whom, either immediately or through other intervening parties, stock has been transferred from a person who originally subscribed, and a simple transferee is not liable to the corporation for any balance that might be unpaid upon it as a subscription.] (Third assignment of error.) But at the time of receiving this certificate for 30 shares of stock, the defendant was called upon to sign a book, which has been put in, evidence here, and in compliance with that requirement of the bank he did sign that book.

He signed his name under the following head: "We, the undersigned, do hereby subscribe for the amount set opposite our respective names of the capital stock of the Citizens' and Miners' Savings Bank and Trust Company, incorporated by an Act of the legislature of the state of Pennsylvania, approved April 13th, 1872, and we do hereby agree to pay the amounts subscribed at such times, and in such manner, as the board of directors of said corporation may from time to time order and direct. Providence, Pa., Saturday, April 12th, 1873."

Then follows along a list of names with the amounts set opposite them in a column arranged for that purpose, and, among others, the name of the defendant, James W. Gillespie, with the figures 3,000 opposite his name.

It is alleged on the part of the defendant, that this book was signed by all parties to whom stock was transferred, and he says that this was done simply for the purpose of having a complete record and list of the stock as it was transferred, and of the stockholders to whom it was transferred.

But in terms as it stands before us, that is not the purport of this writing, and there is no sufficient evidence in the case, in my opinion, to change this from its natural effect, or to give it any other effect than such as would be drawn from it as it stands.

The question then is, what is the purport of this writing subscribed by the defendant?

[Now, as I have already said to you, gentlemen, a person is not liable for unpaid subscriptions to the capital stock of a bank, unless he originally participated in the organization of the bank, and was one who originally subscribed to the capital of the bank, and that the person to whom stock was simply transferred was not, as a transferee, liable to the bank.] (Fourth assignment of error.)

That is, however, subject to this qualification, that if a party

[Citizens and Miners Savings Bank *v.* Gillespie.]

to whom stock has been transferred, upon the requirement of the bank agrees to pay the unpaid balance upon stock which is transferred to him, then a contract relation is established between himself and the bank, which can be enforced. And that is the effect, under the evidence, of this writing, to which the defendant subscribed his name at the time of the transfer.

The evidence is, that it was required of him that he should sign this book as a condition of the stock being transferred to him, and while it reads as an original subscription might, still it is not necessarily confined to that; we are not warranted in discarding it, because it is in part of that form; in substance it assumes to pay, as part of the capital stock of the bank, the amounts set opposite the parties' respective names who signed it. And that, taken in connection with the fact that the defendant was required to do this, as a condition of the transfer to him of his stock, and the issuing of a certificate to him, established a contract or agreement on his part to hold himself liable to the bank to the extent of three thousand dollars.

I might say further, gentlemen, that it was right and proper for the officers of the bank to. call upon the defendant to do this, in making this transfer. While it is true, if he had refused to do that, the bank could not have compelled him, because every one may dispose of his stock in a corporation to another, and a party to whom it is transferred has a right, unless there be by-laws to the contrary which bind him, to have it transferred upon the books of the bank, and certificates for it issued to him, upon a mere transfer.

[But the defendant did not stand upon that right. He accepted the requirement of the bank, and as the bank or corporation could only enforce unpaid subscriptions to stock against parties who had agreed to pay, and so if they had not compelled parties to sign this book, or to sign something like it, would have been remitted to the original stockholders.] (Fifth assignment of error.)

Upon a failure such as this, it was proper for the bank, when parties came in with a transfer of stock, to compel them to sign such an agreement as this, so that they, in every case, might be held for the balance that was unpaid.

\*     \*     \*     . \*     \*     \*     \*     \*

[It is right and proper to take into consideration these parties who appear as original subscribers to this one hundred and twenty-five thousand dollars, and if you find from that, and you are not satisfied in regard to this sixteen thousand dollars, which the appraisers have considered available assets, taking those two circumstances into consideration, that the whole of the stock subscriptions of each solvent stockholder, and

among others this defendant, is required to meet the liabilities, then the plaintiffs are not entitled to recover in this case. As I have said to you before, the question on this issue is not whether there may not be a necessity for calling in some part of the subscriptions; in any view of the case, as I take the evidence, a necessity is shown for calling in some part, but neither you nor I, in this proceeding and under such facts as have been developed, would be able to make an assessment and say how much is needed less than the whole amount. If you find under the evidence that the whole amount is not necessary, then the plaintiffs cannot recover for any amount, because we have no standard to fix how much; but if you are satisfied from the evidence that the whole amount will be necessary, then the plaintiffs will be entitled to recover upon that issue.] (Sixth assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ and filed, *inter alia*, the assignments of error shown above.

*W. H. Jessup* (*Horace E. Hand* with him), for plaintiffs in error.—Can a corporation assign an unpaid subscription to its capital stock, so that its assignee can collect the same?

" Corporations unless expressly restrained by the Act which establishes them or some other Act, have and always have had an unlimited power over their respective properties, and may alienate and dispose of the same as fully as any individual may do in respect to his own property:" Dana *v.* Bank of U. S., 5 W. & S., 223; 1 Kyd. on Cor., 108; 16 Sid., 162.

The directors of a bank have power to assign all its property to trustees to pay its debts: Catlin *v.* Eagle Bank, 6 Conn., 233; Bank of Tennessee *v.* Ellicott, 6 Gill & Johnson, 363.

" The general assignment made by the corporation for the benefit of creditors passed all its rights substantially to the assignees:" Yeager *v.* Trust Co., 14 W. N. C., 296.

"Unpaid stock is as much a part of the assets of the company as the cash which has been paid in upon it:" Sanger *v.* Upton, Assignee, 1 Otto, 60.

It was error to hold that the assignees holding the legal title to this debt, and having power to make the calls under Yeager *v.* Trust Company, which they did, could not collect anything unless there was first an adjudication by a competent tribunal that the whole of the unpaid stock of all the subscribers was required to pay off the liabilities: Bell's Appeal, 44 Leg. Int., 27; Cornell's Appeal, 44 Id., 37.

A transferee or holder of stock is liable to pay calls for any amount unpaid while he so holds the same: Bell's Appeal,

*supra;* Angell & Ames on Corporations, § 534; Webster *v.* Upton's Assignees, 1 Otto, 65.

The Court of Common Pleas may exercise its chancery powers in directing an assignee for creditors, to call in unpaid installments without notice to each stockholder before making such order: Kennedy *v.* Gibson, 8 Wall., 505; Cadle, Receiver, *v.* Baker, 20 Id., 650.

*Fred. W. Gunster (Charles H. Welles* with him), for defendant in error.—The transferee of stock of the bank in question without more is not liable for unpaid subscriptions.

There is nothing in the charter of the bank which imposes any obligation to pay, on the transferee of its stock: Act of Incorporation, P. L., 1873, p. 1100, Appendix C.

In the case of Pittsburgh and Baltimore Coal, Coke and Iron Co. *v.* Otterson, 4 W. N. C., 545, this court said:

"It is settled in this state by Canal Co. *v.* Sansom, 1 Binn, 70; Palmer *v.* Mining Co., 10 Casey, 288, and Franks Oil Co. *v.* McClearry, 13 P. F. S., 317, that the assignee of stock in an incorporated company is not personally liable for assessments made upon him subsequently to his purchase, and his having paid some, certainly cannot make him liable for others."

Before the plaintiffs can recover, they must show a call by the board of directors, or what is equivalent, by a court of competent jurisdiction in a proper proceeding: Lane's Appeal, 9 Out., 49.

We can add nothing to what has been so well said by Mr. Justice GREEN in Bunn's Appeal, and beg leave to refer to the cases cited by him therein: Germantown Pass. R. R. Co. *v.* Fitler, 10 P. F. S., 124; Pierce on Railroads, 75, 74; Morawitz on Private Corporations, 281; Bunn's Appeal, 9 Out., 49.

In every case cited in plaintiff's paper book in support of an action at law, there was a call by the directors or an assessment by a competent court.

We think the correct practice is clearly pointed out in Bunn's Appeal and Bell's Appeal, viz.: That where a creditor or creditors desire to avail themselves of the equitable liability of stockholders they should file a bill in equity, praying for an assessment on which an action can be brought or for a decree directly against each stockholder.

Mr. Justice PAXSON delivered the opinion of the court March 21st, 1887.

While the assignments of error in this case are numerous, the questions involved are but few, and those easily disposed of; and we may remark at the outset that we need not discuss

the question whether the defendant, as the transferee of stock, was liable for the unpaid subscription, for the reason that, in point of fact, he assumed the liability of an original shareholder by his subscription or agreement of April 12th, 1873. This established a direct contractual relation between the defendant and the company upon which he is as liable to a suit as if he had been an original subscriber. This is the fair, legal construction of that paper.

This suit was brought by the assignees of the bank to collect the whole of the unpaid subscription. There was no proof of any assessment. The plaintiff offered to prove an assessment or order of Judge HANDLEY, made at chambers during vacation, authorizing the assignees to collect the whole of the unpaid subscriptions. See 12th assignment. We have no doubt of the power of a judge at chambers to make such an order. It is an exercise of chancery power, and the chancery side of the court is always open. While this order, standing alone, would be competent evidence, it was not error to reject it as a whole. It was accompanied by an offer to prove a petition and citation which were not pertinent to the issue trying. It is always well to remember that, in making offers of evidence, the court has a right to regard the offer as a whole. The judge is not bound, when it contains several subjects, to treat it piecemeal, and admit one part and reject the residue. He may do so, but we will not reverse for his refusal. This is settled by numerous decisions, which we need not specify.

There being no assessment in evidence, the learned judge left it to the jury to find whether the whole of the unpaid subscription was required to pay the debts of the company. We see no error in this. If all the unpaid subscriptions were required to pay the creditors, no assessment was necessary under the authority of Yeager *v.* Scranton Trust Co., 14 W. N. C., 296. It is well to observe that the syllabus of that case, as reported, is not correct. It is much broader than the point decided, which was, that, when it is shown that the whole subscription is required to pay the creditors, an assessment is not essential. It was said, in the opinion of this court, that: " The uncontradicted evidence shows that it was necessary to collect the whole of this stock subscription in order to pay the sums due to the depositors of this insolvent corporation." There is not even an apparent conflict between the case referred to and the later cases of Lane's Appeal, 105 Penna., 49, and Bell's Appeal, 44 Leg. Int., 27. These were creditors' bills, filed against insolvent corporations, to compel the payment by the stockholders of their unpaid subscriptions, and it was held that, in such cases, there must be an account

[Dimmick v. Cook & Co.]

taken of the amount of debts, assets and unpaid capital, and a decree for an assessment of the amount due by each stockholder. The reason of this is plain. Upon the insolvency of a corporation a stockholder is liable for only so much of his unpaid subscription as may be required to pay the creditors. Hence he may not be called upon in an arbitrary way to pay any sum that an assignee or creditor may demand. It is therefore requisite to ascertain, in an orderly manner, the extent of a stockholder's liability before proceedings are commenced to enforce it. But the necessity for this does not exist when the whole amount is required to pay the debts. Hence, in such cases, as was said in Yeager v. Scranton Bank, *supra*, an assessment is not essential. The assignee may sue at once, for all is required.

In the case before us the jury found that the whole of the unpaid stock was not required to satisfy the debts of the bank. As this finding may have been due in part to the testimony referred to in the ninth assignment of error, it is proper that I should refer to it. The court below, against the objection of plaintiffs' counsel, permitted the defendant's counsel to interrogate Mr. Kennedy, the witness on the stand, as to the financial responsibility of one Henry O. Silkman, the allegation being that Silkman was a stockholder to the amount of $20,000, and that if this subscription was good, the whole amount of the unpaid stock would not be needed. There was no evidence that Silkman was a stockholder to the extent of over $5,000, hence it was clear error to admit evidence as to his ability to pay upon $20,000. It is true, the witness was not very clear upon the subject of Silkman's responsibility; but it is not easy to measure the effect of such evidence as this upon the jury, and because we cannot do so, and because its admission was error, we must reverse this judgment.

Judgment reversed, and a *venire facias de novo* awarded.