RATHBONE v. AYER et al.

(Supreme Court, Appellate Division, Third Department.  May 12, 1903.)

1. CORPORATIONS—BANKRUPTCY—UNPAID STOCK SUBSCRIPTIONS — ACTIONS BY TRUSTEES.

The trustee in bankruptcy of a corporation may sue stockholders to recover unpaid stock subscriptions.

2. SAME—CALL.

The stock corporation law (Laws 1892, p. 1841, c. 688) provides that subscriptions to the capital stock of a corporation shall be paid at such times and in such installments as the board of directors may by resolution require. *Held*, that where, by the certificate of incorporation, the corporation is to commence business with the full amount of capital stock paid in, and in an action by the trustee in bankruptcy of the corporation against the stockholders to recover unpaid stock subscriptions it appears that the corporation commenced business, it is not necessary for plaintiff to show any call for the subscriptions.

3. SAME—CALL.

Inasmuch as, on insolvency of a corporation, the right to call for unpaid stock subscriptions passes to the representative in bankruptcy, the directors of the corporation cannot relieve the stockholders from liability by refusing to issue a call.

4. SAME—ASCERTAINMENT OF INDEBTEDNESS.

Where, in an action by the trustee in bankruptcy of a corporation against the stockholders to recover unpaid stock subscriptions, it appears that the claims allowed against the bankrupt corporation are in excess of the full amount of unpaid subscriptions, it is not necessary to go into the bankruptcy court to ascertain the amount of the stockholders' liability.

5. SAME—COMPLAINT—DEMAND—ALLEGATIONS.

In such an action, a complaint which alleged a refusal on the part of defendants to pay the plaintiff the unpaid subscriptions sufficiently alleged a demand for such subscriptions.

6. SAME—NECESSITY OF DEMAND—REFUSAL TO PAY.

A claim by defendants that the amount had been paid would excuse a demand.

7. SAME—CONSIDERATION—DELIVERY.

In a suit by the trustee in bankruptcy of an insolvent corporation against stockholders for unpaid stock subscriptions, an allegation that defendants claimed that the demand was paid warranted an inference of a delivery of the stock, or a waiver thereof, which would operate as a consideration for the promise.

Appeal from Trial Term, Chemung County.

Action by James B. Rathbone, as trustee in bankruptcy of the Elmira Steel Company, against F. Wayland Ayer and others. From a judgment sustaining defendant Ayer's demurrer to the complaint, plaintiff appeals. Reversed.

The complaint shows the appointment of the plaintiff as trustee in bankruptcy of the Elmira Steel Company, a bankrupt; that the said company was organized with a capital stock of $500,000, divided into 5,000 shares, at par value of $100 each; that the certificate of incorporation fixed the amount with which the corporation should begin business at $500,000; that the defendant Ayer was a subscriber for 800 shares, and the defendant Baird for 50 shares, of said stock; that the other subscribers are all nonresidents, and without the jurisdiction of the court, except one George M. Diven, who was a subscriber to 1 share, which was paid; that the said corporation was actively engaged in business until October 1, 1900, and that at all times since December, 1900, the said company has been inactive and defunct; that the

plaintiff has converted the other assets of the corporation into cash; that the value of such estate amounts to $110,000; that claims have been allowed by the plaintiff to an amount of upwards of $216,000. It further shows that the said defendants have failed to pay any part of their subscription to the capital stock of the said corporation, and that each of said defendants claims that he has paid the amount of such subscription, and refuses to pay the sum of his said subscription, or the par value of such stock so subscribed by him, or any part thereof. Judgment is thereupon asked against each defendant for a sum equal to the par value of the stock to which he so subscribed. To this complaint the defendant Ayer has demurred upon the grounds that the plaintiff has not legal capacity to sue; that there is a defect of parties plaintiff, in that the creditors of said company should have been joined as plaintiffs; that there is a defect in parties defendant, in that the creditors of said corporation should have been joined as defendants; and that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained upon the ground that the complaint did not state a cause of action, in that it failed to state that the obligation of defendants was due at the time of the commencement of the action. From the interlocutory judgment thus entered, plaintiff has appealed.

Argued before PARKER, P. J., and SMITH, KELLOGG, CHASE, and CHESTER, JJ.

Reynolds, Stanchfield & Collin (Edward G. Herendeen, of counsel), for appellant.

Rockwell & McCann (H. H. Rockwell, of counsel), for respondent.

SMITH, J. By section 54 of the stock corporation law (chapter 688, p. 1841, Laws 1892), as it read at the time of the commencement of this action, the stockholders of every stock corporation were made personally liable to its creditors, to an amount equal to the amount of capital stock held by them, respectively, for every debt of the corporation, until the whole amount of its capital stock issued and outstanding at the time such debt was incurred should have been fully paid. This liability is wholly statutory, and in the nature of a penalty. It is by the statute given to the creditors, and not to the corporation, and clearly it does not pass to an assignee in bankruptcy. The plaintiff does not rest his right upon this statute, or claim aught therefrom. The action is brought to recover unpaid subscriptions for stock. These unpaid subscriptions are claimed to be debts belonging to the corporation, which the corporation itself could have collected, and therefore assets of the corporation which pass to the assignee in bankruptcy. This claim seems to be fully supported by the authorities. In Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220, the headnote, in part, reads:

"As the company might have sued a stockholder for his unpaid subscription at law, the assignee, succeeding to all its rights, has the same remedy."

In Stoddard v. Lum, 159 N. Y. 273, 53 N. E. 1109, 45 L. R. A. 551, 70 Am. St. Rep. 541, the opinion, in part, reads:

"This [unpaid stock subscription] is a contract liability, pure and simple, and one that the corporation, if solvent, could have enforced in the courts of this state. This cause of action, in the event of corporate insolvency, vests in the assignee for the benefit of creditors, or in a receiver duly appointed."

In Lang v. Lutz, 39 Misc. Rep. 3, 78 N. Y. Supp. 200, Justice Kennefick, at Special Term, in discussing this question, says:

"The amount unpaid upon his capital stock is a debt which the delinquent stockholder owes to the corporation, and which the corporation or its legal representatives can enforce (Stoddard v. Lum, 159 N. Y. 273, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541), or which could be enforced by a bill in equity filed by a creditor in behalf of all the creditors against the corporation and all the delinquent stockholders."

It is urged on behalf of the respondent that, although these unpaid subscriptions be assets of the corporation, they have not become due and payable, for the reason that no proper call has been made. By section 43 of the stock corporation law (Laws 1892, p. 1835, c. 688), subscriptions to the capital stock of a corporation are required to be paid at such times and in such installments as the board of directors may by resolution require. It is urged that the complaint does not show any call by the board of directors, nor, in the absence of a call by the board of directors, any assessment by the court, and order directing the collection of the assets, as the only legal substitute therefor, by which the liability to pay at a certain time can become fixed. To this contention I think there are two answers: By the certificate of incorporation, to which this defendant was a party, this corporation was to commence business with the full amount of capital stock paid in. The complaint shows that the corporation not only commenced business, but had continued until it became bankrupt, and that it had now ceased doing business. It therefore appears that the time when these subscriptions were to become payable had long since accrued. In such case no call or demand of the board of directors is required. Phœnix Warehousing Co. v. Badger, 67 N. Y. 294.

But upon insolvency the right to call for unpaid subscriptions passes to the representative in bankruptcy. In such case, the directors could not relieve defendants from liability by refusing to issue a call. In Ross-Meehan Brake Shoe Foundry Co. v. Southern Malleable Iron Co. (C. C.) 72 Fed. 957, it is held when a corporation is insolvent, and proceedings are pending instituted by creditors to wind up and distribute its assets, no call or assessment is necessary before the institution of suits to collect unpaid balances to its stock. In Hatch v. Dana, 101 U. S. 215, 25 L. Ed. 885, Justice Strong, in writing for the court, says, "In bankruptcy an assessment or call may be made, for the assignee of a bankrupt corporation succeeds to its rights and becomes the legal owner." In Scovill v. Thayer, 105 U. S. 143, 26 L. Ed. 968, it was held that an action for an unpaid subscription could not be brought until an order of the bankruptcy court was made, "or some authorized demand upon the stockholder to pay the balance due on his stock." In the Matter of the Crystal Spring Bottling Co. (D. C.) 96 Fed. 945, an application was made to the bankruptcy court for an order directing suit to recover unpaid balances of subscriptions. The expression there used, that a call could only be made by a trustee "under direction of the court," does not necessarily mean by order previously made. By section 47 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 557 [U. S.

Comp. St. 1901, p. 3439]), trustees are required to collect and reduce to money the property of the estate "under the direction of the court." In Chism v. Bank (Miss.) 27 South. 610, the Supreme Court of Mississippi has held that, notwithstanding this provision, it was the plain duty of the trustee to collect the debts of the estate without waiting for the specific direction of the court:

"He is clothed by his appointment with the legal title to the estate of the bankrupt, and it is his duty to collect by suit, if necessary, the debts due to it; and his failure to do so would render him liable for any loss incurred thereby. His right to sue is an incident to his title and duty in the premises, and it is not necessary for him to obtain an order of the bankruptcy court to justify him in maintaining suit for the protection of the rights of the estate."

In Matter of Mersman, 7 Am. Bankr. Rep. 47, the opinion of Hotchkiss, Referee, in part, reads:

"The suggestion is made that the trustees in bankruptcy may of their own motion begin actions to set aside alleged fraudulent or preferential transactions of the bankrupt. That may be, but it is not to be doubted that the referees in charge, having general power to supervise their acts, have also power to order the withdrawal of suits already begun without leave."

See, also, Rankine v. Elliott, 16 N. Y. 379.

Nor is it necessary to go into the bankruptcy court to ascertain the amount of the indebtedness. By the complaint it appears that the claims allowed against the bankrupt corporation are in excess of the full·amount of the unpaid subscriptions sought for in this action, and that all the other subscribers are nonresidents and without the jurisdiction of the court. These facts are admitted by the demurrer. Assume, for the argument, that the assignee in bankruptcy has only the right to collect so much of the unpaid stock subscriptions as is necessary to pay the debts. If the debts were less than the unpaid stock subscription, a necessity might well be held to arise for an assessment by the bankruptcy court, and such an assessment might well be held to be a condition precedent·to the right to proceed against the delinquent stockholder. Where, however, the indebtedness exceeds the amount claimed as an unpaid subscription, it has been held that an assessment is unnecessary before an action may be brought to recover the amount unpaid thereupon. In Citizens' & Miners' Savings Bank & Trust Co.,·to Use, v. Gillespie, 115 Pa. 564, 9 Atl. 73, it is held:

"In an action to recover the unpaid subscriptions on stock by the assignee for the benefit of creditors of an insolvent corporation, there can be no recovery unless an assessment has first been made, or the jury find from the evidence that the whole of the unpaid subscriptions is necessary to pay the creditors of the corporation."

Mr. Justice Paxson, in writing for the court, says:

"There being no assessment in evidence, the learned judge left it to the jury to find whether the whole of the unpaid subscriptions was required to pay the debts of the company. There was no error in this. If all the unpaid subscriptions were required to pay the creditors, no assessment was necessary, under the authority of Yeager v. Scranton Trust Co., 14 Wkly. Notes Cas. 296. * * * Upon the insolvency of a corporation·a stockholder is liable for only so much of his unpaid subscription as may be required to pay the creditors. Hence he may not be called upon in an arbitrary way to pay

any sum that an assignee or creditor may demand. It is therefore requisite to ascertain in an orderly manner the extent of the stockholder's liability before proceedings are commenced to enforce it. But the necessity for this does not exist when the whole amount is required to pay the debts. Hence, in such a case, as was said in Yeager v. Trust Co., supra, an assessment is not essential. The assignee may sue at once, for all is required."

See, also, Swearingen v. Dairy Co., 198 Pa. 75, 47 Atl. 941, 53 L. R. A. 471.

The admitted fact that the debts exceed the unpaid subscription takes this case out of the rule laid down in Scovill v. Thayer, supra, and as recognized in Citizens' & Miners' Trust Co. Case, just cited, to the effect that a prior assessment is a condition precedent to the right to bring the action.

We think the complaint sufficiently alleges a demand by the assignee of payment of these unpaid· subscriptions. It alleges a refusal on the part of the defendants to pay the plaintiff therefor. The allegation that the defendants claim that this amount was paid would of itself excuse a demand, even if a demand were otherwise necessary beyond the actual bringing of the suit, as in such a case a demand would be useless. From the allegation of the claim of payment by defendant may also be inferred a delivery of the stock, or a waiver thereof, which would operate as a consideration for the promise.

Without discussing in detail the cases cited by respondent's counsel, it is sufficient to say that decisions which at first glance may seem to be antagonistic to the conclusion here reached are reconciled when found to be in actions brought under section 54 of the stock corporation law (Laws 1892, p. 1841, c. 688), or under similar statutes. The liability imposed by that section is not in any way inconsistent with, but is clearly in supplement of, the contract liability to pay to the corporation the subscriptions made, or so much thereof as may be necessary for the proper conduct of the business of the corporation, or for the payment of its debts.

We are of opinion, therefore, that the complaint states a good cause of action, and that the demurrer should have been overruled.

Judgment reversed, and demurrer overruled, with usual leave to answer on payment of costs in this court and in the Special Term. All concur.